UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIEN HARPER,

                              Plaintiff,

                                                                             03 CV 10124 (RPP)

   -against-

                                                                               **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Plaintiff Danien Harper ("Plaintiff"), pro se, brings this action pursuant to § 205(g) and § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), challenging the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her March 2002 Plan to Achieve Self-Support. The Commissioner moves to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), or alternatively, for a judgment on the pleadings pursuant to Rule 12(c) of the Fed. R. Civ. P. Plaintiff has failed to file any opposition papers with the Court. For the reasons that follow, the Commissioner's motion is granted.

**I.    Background**

        Plaintiff filed for Supplemental Security income ("SSI") benefits on June 17, 1999 and was found to be disabled due to a mental impairment. (Administrative and Supplemental Record filed by the Commissioner ("Rec.") at 24, 143.)[1] Plaintiff's established disability onset date was

---

[1] References to "Rec." are to the the administrative and supplemental record of 271 pages filed by the Commissioner.

June 17, 1999. (Id.) On November 14, 2001, Plaintiff filed for Disability Insurance Benefits ("DIB") due to her mental impairment[2] and was approved with an established disability onset date of November 30, 2000. (Declaration of Sandra Escuder dated May 13, 2011 ("Escuder Decl.") ¶ 3.) Plaintiff's DIB payments were terminated during periods when she was engaged in substantial gainful activity.[3] During relevant time periods, Plaintiff's DIB payments increased her total income beyond the required threshold and triggered income-based suspension of her SSI payments.[4]

## A. Plaintiff and the PASS Program

The Plan to Achieve Self-Support ("PASS") program was designed to help blind or disabled persons become self sufficient, with the worthy goal of their eventual removal from the Social Security Income rolls. The Code of Federal Regulations governing SSI states in relevant part:

> If you are blind or disabled, we will pay you SSI benefits and will not count the part of your income (for example, your or a family member's wages, title II benefits, or pension income) that you use or set aside to use for expenses that we determine to be reasonable and necessary to fulfill an approved plan to achieve self-support. (See §§ 416.1112(c)(9) and 1124(c)(13).) You may develop a plan to achieve self-support on your own or with our help. As appropriate, we will refer you to a State rehabilitation agency or agency for the blind for additional assistance in developing a plan.

20 CFR § 416.1180. In order to qualify for the PASS program an individual must submit a plan that: (1) is designed especially for the beneficiary; (2) is submitted in writing; (3) is approved by

---

[2] Plaintiff suffers from paranoid schizophrenia. (Rec. at 94.)
[3] Substantial Gainful Activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit. 20 C.F.R. § 404.1572(a) and (b). Plaintiff's DIB payments were terminated due to substantial gainful activity during the periods October 2004 through December 2005, and January 2008 through October 2010. (Escuder Decl. ¶¶ 4-6.)
[4] Plaintiff's SSI applications were denied for excess income on July 28, 2006, reinstated on June 15, 2007, denied for excess income on October 17, 2008, denied for excess income on April 1, 2009, and reinstated on September 1, 2009. (Escuder Decl. ¶¶ 10-11.)

2

the SSA; (4) provides a specific employment goal that the beneficiary has a reasonable likelihood of achieving; (5) provides a step by step plan to reach that goal which is both viable and financially sustainable; (6) is limited to only one employment goal; (7) shows how the employment goal will generate sufficient earnings to substantially reduce or eliminate your dependence on SSI or eliminate your need for Title II disability benefits; (8) provides beginning and end dates for meeting the goal; (9) provides target milestones for meeting the goal; (10) details what expenses will be incurred, and the reasonableness of these expenses; (11) shows what money the beneficiary has and will receive, how he or she will use or spend it to attain the employment goal, and how he or she will meet his or her living expenses; and (12) detail how the money set aside under the plan will be kept separate from his or her other funds.  20 CFR § 416.1181.

### *The March 2002 PASS*

In March 2002, Plaintiff filed a PASS with the Social Security Administration ("SSA"). Plaintiff's plan was to operate her own booth at a hair salon with the ultimate goal of opening up her own salon within five years. (Rec. at 54-65.)  Despite providing the required paperwork for her PASS, (Rec. at 179-244), Plaintiff's PASS was denied by the SSA, a decision that was upheld upon her request for reconsideration (Rec. at 37-39; 154-55).  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to adjudicate her PASS proposal. (Rec. at 41.)  On September 10, 2002, a hearing was held before ALJ Wallace Tannenbaum. (Rec. at 22-36.)  Plaintiff testified that she attended trade school to be a hair stylist years earlier, obtained a cosmetology license, and subsequently worked as a hair stylist at 18 years of age (Rec. at 26.)  In order to currently work in the field of cosmetology, she stated that she would need to return to school in order to refresh her knowledge and skill. (Rec. 25-26.)

Plaintiff also testified that she had been actively looking for work in a hair salon, and just recently was approached by two beauty salon owners who had offered her a booth in their salon. (Rec. at 29.)  Plaintiff subsequently declined their offer because she "wanted to make sure that everything was clear" and that she would properly be able to deal with her mental disability as to not suffer a relapse. (Rec. at 30.)  Plaintiff also testified that she was receiving daily outpatient treatment at Mount Sinai Hospital. (Rec. at 31-32.)  By decision dated October 21, 2002, ALJ Tannenbaum found that the SSA had properly denied Plaintiff's PASS as it failed to meet all the criteria of 20 CFR § 416.1181.  In his findings, ALJ Tannenbaum stated, inter alia, that Plaintiff (1) had very limited knowledge about operating a business; (2) had very limited experience in hair styling work; (3) was already enrolled in a vocational program for security work and cleaning work; and (4) had credit card debt that exceeded $3,000. (Rec. at 12-13.)  On October 9, 2003, the ALJ's decision became the final decision of the Commissioner after the SSA Appeals Council denied Plaintiff's request for review. (Rec. at 5-7.)

On December 22, 2003, Plaintiff filed the instant Complaint challenging the Commissioner's final decision.  Plaintiff's Complaint incorrectly states that the Commissioner denied her disability benefits.  As discussed supra, the Commissioner found Plaintiff to be disabled due to a mental impairment on June 17, 1999.  Plaintiff, however, is proceeding pro se, and the Court will liberally construe her pleadings, see Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and presume Plaintiff's Complaint challenges the denial of her March 2002 PASS.  Subsequently, on April 1, 2004, the Court remanded the case back to the Commissioner for additional findings of fact pursuant to 42 U.S.C. 405(g). (See Stipulation and Order dated March 30, 2004, ECF No. 6.)  Accordingly, the

Appeals Council vacated the final decision of the Commissioner and remanded the case back to the ALJ for further proceedings. (Rec. at 152-53.)

In July 2004, during the pendency of the instant action, Plaintiff filed a new PASS with the SSA with the stated goal of becoming a physician's assistant. (Escuder Decl. ¶ 17.) On September 1, 2004, Plaintiff resubmitted the July 2004 PASS with the revised goal of becoming a licensed practical nurse. (Id.) The SSA approved this PASS, however, the PASS was suspended in December 2004 because Plaintiff failed required courses necessary to reach her vocational goal of becoming a licensed practical nurse. (Escuder Decl. ¶ 18.)

*The November 2004 Hearing*

On November 4, 2004, a hearing was once again held before ALJ Tannenbaum regarding Plaintiff's March 2002 PASS. (Rec. at 260-71.) At the hearing, Plaintiff provided additional evidence to the ALJ including an updated resume and executive summary of her business plan to open a salon. (Rec. at 265-66.) Plaintiff testified that since September 2004 she had been attending Ulster College to become a nurse's assistant, but ultimately desired further schooling to become a registered nurse. (Rec. at 268.) Plaintiff stated that it was her intention to attend school from 9:00 a.m. to 12:00 p.m. and operate a salon from 1:00 p.m. to 8:00 p.m. (Id.) Plaintiff testified that this arrangement would allow her to pay off her preexisting debts[5] as well as her tuition for nursing school. (Id.) By decision dated January 27, 2005, ALJ Tannenbaum once again denied Plaintiff's March 2002 PASS. (Rec. at 143-45.) In his findings ALJ Tannenbaum stated that Plaintiff's business plan was "vague with respect to the specific steps she would take to meet her vocational objective." (Rec. at 144.) Furthermore, he stated that Plaintiff's plan to use excluded monies gained through her PASS vocational objective to pay for

---

[5] Plaintiff testified that she had debts from six credit cards and three phone bills.

nursing school would clearly represent misuse. (Rec. at 145.)  ALJ Tannenbaum also noted that Plaintiff's September 2004 PASS had been approved by the SSA, and as per SSA policy, a claimant was not permitted to have more than one PASS at the same time. (Id.)

Pursuant to 42 U.S.C. § 405(g), cases which the district court has remanded back to the Commissioner are required to be returned to the court upon completion of the administrative proceedings.  In the instant case, Defendant inadvertently failed to return Plaintiff's case to the Court. (Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem") at 5.)  Upon identifying this oversight, Defendant filed an Answer to Plaintiff's Complaint and submitted an updated record for the Court's review.  Defendant now moves for a judgment on the pleadings.

## II.   Legal Standard

The standard for granting a motion for judgment on the pleadings under Fed. R. Civ. P 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverley Hills, 259 F.3d 123, 126 (2d Cir. 2001); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994); see also Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).  "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." Patel, 259 F.3d at 126.  A Rule 12(c) motion should not be granted unless the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." Id.

## III.   Discussion

Defendant's argument is twofold: (1) Plaintiff's September 2004 PASS was approved, thus the decision denying Plaintiff's March 2002 PASS is moot and this Court no longer maintains subject matter jurisdiction and (2) the Commissioners' denial of Plaintiff's March 2002 PASS was supported by substantial evidence. (Def.'s Mem. at 7-10.)  As an initial matter,

the Court finds the Government's mootness argument unavailing.  A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 168 (2d Cir. 2007) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)).  Plaintiff's Complaint sought relief from Commissioner's unfavorable decision with respect to her March 2002 PASS, involving the ownership of a hair salon.  The fact that a different PASS was approved – one with a completely different occupational objective – is of no moment.  While it is true that a beneficiary can only obtain one PASS at a time, see SSA POMS SI 00870.006 E.1, the Court's sole duty in the instant case is to determine if the Commissioner's denial of Plaintiff's March 2002 PASS was supported by substantial evidence.  The issue that remains "live" in this case is not whether Plaintiff's subsequent PASS was approved, but rather whether the Commissioner's erred in rejecting Plaintiff's March 2002 PASS to operate a hair salon.  Therefore, the Court will move on to examine whether the Commissioner's denial of Plaintiff's March 2002 PASS was supported by substantial evidence.

The district court reviews the ALJ's conclusions of law de novo and findings of fact under a substantial evidence standard.  42 U.S.C. § 405(g); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir 2010).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Genier, 606 F.3d at 49 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  ALJ Tannenbaum's findings of fact were based on substantial evidence supporting his denial of Plaintiff's March 2002 PASS.  First, Plaintiff's plan to attend school to become a registered nurse while also operating a hair salon clearly runs afoul of SSA regulations limiting the plan to one employment goal.  See 20 C.F.R. § 416.1181(a)(6).  Additionally, as noted supra, SSA regulations restrict a beneficiary from obtaining more than one PASS at a time.

7

See SSA POMS SI 00870.006 E.1. The SSA had already approved Plaintiff's September 2004 PASS to become a licensed practical nurse, and thus the ALJ correctly denied Plaintiff's March 2002 PASS. In any event, the ALJ properly concluded that Plaintiff was not adequately prepared to achieve her vocational goal. The ALJ noted that Plaintiff's "attention span, memory, and concentration were limited during the hearing. (Rec. at 150.) Furthermore, Plaintiff carried large debts, lacked substantial experience in the hair styling field, and did not demonstrate the knowledge and skill necessary to successfully run a business. (Id.)

### III. Conclusion

The Court is satisfied that the Commissioner's denial of Plaintiff's PASS was based upon substantial evidence. Defendant's motion for judgment on the pleadings is granted.

IT IS SO ORDERED.

Dated: New York, New York
February // 2012

_____
Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion sent to:**

*Pro se Plaintiff:*

**Danien Harper**
2844 8th Avenue
Apartment 4D
New York, NY 10039

*Counsel for Defendant:*

**John E. Gura**
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007
212-264-2712
Fax: 212-637-2750